May it please the Court, my name is Judith Wood and I represent Miguel Angel Gomez. This case presents two major issues. The first issue is whether the immigration judge and the Board of Immigration Appeals applied the correct analysis as to whether he had been convicted of a particularly serious crime. The immigration judge relied on a BIA case from 2002 which held that a person who sells drugs and is convicted of such a crime is guilty of a particularly serious crime and that there were very narrow exceptions, extremely narrow exceptions, and he laid out five factors. The judge didn't lay out, but the board did. And that judge who heard this case did not analyze this case under those five factors. He immediately gave very short shrift to his analysis by saying that the respondent was not consistent in regard to the amount of sales. Now, the respondent throughout his testimony testified that he obtained a bag of a controlled substance and sold one bag. Later, there was a motion to continue. Now, the attorney who wrote the motion continue wrote bags with an S, but that was not testimony. That was not testimony at all. And the respondent was very consistent throughout his hearing that it was one bag. It was an extremely sympathetic situation. The case that the board set out these factors, it's understandable why the board would say that drug dealers are a danger to society and that selling drugs is a particularly serious crime, because it by definition infects the entire society. But in that case, you were dealing with a hardened drug user and seller. Mr. McGill never used drugs. He came to the United States when he was 11 years old. This event occurred in 2006. He never had any criminal convictions before then. He was really a good guy. He supported his family. He worked from the time he was 17. What happened was he had a really bad accident. While he was at work, he fell and injured his foot. He was put in the hospital. He had an operation. During the operation, morphine was administered to him by IV, and he was put into code blue. He flat lined for a short time. He did come to, thank God, from that hearing. I don't really understand things. I've never been the same. My whole life has spiraled down. I can't really understand things. This event that happened when he sold the one bag was something that he would not in his right mind have done. He kept saying that over and over again during the course of the hearing. However, the judge made no analysis, either under Francesco or Weill, as to the seriousness of this crime. And that's why I'm asking that the case be remanded. In this case, the BIA did rule in the alternative and also addressed his withholding claim on the merits. So I realize that your argument time is short, and I'd really like to hear from you as to where the error is in the analysis with regard to the merits of withholding removal. Do you mean his well-founded fear of persecution, Your Honor? Right. Because he is not well, both mentally and physically, he still needs ongoing therapy for his leg, and he doesn't cognate sufficiently to deal with society here in the United States where he's surrounded by a devoted mother and siblings. He will not be able to function properly in his home country, which is Mexico. There's numerous newspaper articles and human rights articles about the fact that Sure, but how is that on account of his membership in the social group, assuming that the social group is cognizable? Because he will be targeted. He will be targeted by the criminals. He won't be targeted by the government. We're not arguing that. But he'll be targeted by the criminals because he's unable to protect himself. A normal person in Mexico at this time is not safe. You have numerous cases, Henriquez and where the judge found, this court found that even if someone testifies in court and they become a social group because they testified in open court against cartels, that person is a member of a social group. That's a visible social group. Then you have in Tapia Madrigal, a policeman, that was an extreme situation where other policemen were found headless in the streets. But what I'm saying is that the situation in Mexico is so severe at this moment, it's basically a failed state. And this individual is hardly able to function in the United States. He has testified that he can no longer, he can no longer function. And he's a big guy. He's about 6'2", weighs about 200 pounds. His mother, who is about my size, had to bathe him. And it's only while he's been in he's actually gotten better in a way while he's been in custody. Because he has a full staff taking care of him. He started to bathe daily. But that's a very, very clear symptom of mental illness, when you do not bathe daily. I hear everything you've said. But I guess I'm still left thinking that we're not in a position to reverse the BIA's conclusion that, yeah, you've made a compelling case that he's going to have a difficult time if he has to return to Mexico. But I still haven't heard evidence that's in this record that shows that the mentally ill are persecuted in Mexico because of their mental illness. It's a different thing between if somebody is mentally ill in Mexico, do they have a hard time functioning, getting around, taking care of themselves? Sure. We can concede that. But I think the burden he had here was to show that he's going to face persecution as our law defines that term. And I just haven't heard you say anything that gets to that point yet. Well, there is some case law and some information regarding mental hospital facilities in Mexico. And we believe that he will be probably institutionalized in Mexico and won't receive the proper type of care that one needs to have when one is put in a mental institution. Of course, this is perspective. We do not know whether he'll be put in a mental institution or not. I concede that. Right. And that's the BIA, that's the ground on which they said this is all speculative, because there's not even evidence to show that he would actually wind up in some kind of a public institution. And yet he's unable to function here. And therefore, without family support in Mexico, his chances of surviving or functioning at all are much less. He's only been able to function slightly, lately, while in custody, while he has government personnel taking care of him. So I think in Mexico he'll wind up as an abandonado, as people who are street people who have no one to take care of them, are in fact members of social groups. So there are clear indicia that it's not a question of members of social groups, because the BIA assumed that even if it's a cognizable social group, the BIA didn't pass on that. So the question that we're really trying to focus on is what is the record evidence that the mentally ill are targeted in the fashion that you've argued before us today and in the briefing? The evidence is in the country reports regarding the severe decline in the government structure, in law enforcement, in the collusion between the police and the government, the fact that innocent people are killed on the street every day in Mexico. And this gentleman is innocent. Basically he's not going to be a member of some big criminal cartel in Mexico. He has no connection to that. And he's disabled. He's clearly disabled. And in the judge's handling of the case, there was a big problem regarding his disability, because when he was he's been detained the whole time. He remains detained. Although he did get a Rodriguez fund of 40,000, the family cannot afford to pay it, and he remains detained. And they cannot obtain even 10%. So this is a big problem in getting a neurologist or psychiatrist to visit an institution where he's detained. And at first the government was going to cooperate. DHS was going to cooperate. And then they changed course and would not cooperate with having a neurologist. They admitted that he needed to be seen by a neurologist, and we were trying to get someone to do it on a pro bono basis, and then the government said they would do it, then they pulled out. And then the judge decided to hold the hearing anyway, without the report of a neurologist. So the thing is, this guy is not able to function, and he will be persecuted because of the fact that he'll become a visible disabled person on the streets of Mexico. On the streets of Mexico where women are killed every day, where just children are killed every day, where people are forced into a downward spiral of crime and fear. All right. Thank you very much, counsel. May it please the court. Anna Nelson for the respondent, attorney general. In this case, the only issue the petitioner raises before the court is whether he's still eligible for withholding of removal. And in this case, the board made a dispositive finding that the petitioner failed to establish that he more likely would not be persecuted on account of his proposed particular social group. He failed to challenge that, and the court decided to withhold that finding in any way before this court, and therefore waived it. Even if he hadn't waived it, the record does not compel the conclusion that he would be persecuted on account of any ground, including his proposed social group. There's no claim of past persecution, therefore he has the burden of proving that it's more likely than not that he would be persecuted on account of his proposed social group. There seems to be a different fear of persecution at every stage. Before this court, he hasn't really articulated until now in the argument what he actually fears, what harm he fears from whom. Well, what about just the argument that, look, you don't need a country report to tell you that somebody who can't even function on his own here, if sent back to a place where he has no family, no support group whatsoever, no ability to earn any kind of a living to keep himself off the street, that he'll wind up homeless and he'll be institutionalized? That doesn't sound crazy to me at all. It's not crazy, but it's still speculation, not based on record evidence. And as the board found, the record shows that there are poor health care facilities in Mexico, difficulties with disabilities, but there's really no indication how people with mental illness fare, how people with depression fare. Again, there's no evidence that he will. It's all speculation that he'll end up in a mental institution. And this court in Mendoza Alvarez held that, it acknowledged that there's an inadequate health care system in Mexico, but that still doesn't establish that anyone would be persecuted on account of an inadequate health care system. It's not, no one's targeting the mentally ill in Mexico, and that's the account of. And because none of his speculative fears are supported by this record, the record doesn't compel the conclusion that he would be persecuted on a convo ground. There's no reason to reach the particularly serious crime issue in this case. If there are no other questions. I have nothing for Judge Wofford. All right. Thank you very much for your argument. Thank you, Your Honor, for taking time to hear this case. I think this case kind of goes outside of the limits of hard letter law. This person is going to be harmed, Mr. Gomez, for something that he cannot change. Although he was not born with a disability, he was born with a disability. When he was born mentally ill, he became mentally ill. He became mentally ill. And when he became mentally ill, he entered into this transaction where he sold one bag of drugs. Because of that, he's considered to be someone who's been convicted of a particularly serious crime. That's why this case has to get remanded, because that's not a fair ruling. Either under Frantesco, all the elements of Frantesco, and this court has held that actually the immigration judge has to hold an analysis, at least under Y.L., where even if they find that it's a particularly serious crime, there are exceptions. No analysis was held of that. It was one sentence, just one sentence where the judge said, sorry, he was inconsistent in the amount of drugs that he sold. That's not true. The respondent was very consistent, as consistent as a person can be, said over and over again. What happened was my daughter asked me for $40. I felt really guilty. I wasn't able to support her. I was barely able to take a bath. My mother had to give me a bath. So I asked my friend, can you lend me $40? And the friend said, okay, take this phone, take the bag, sell the bag. He sold the bag. He admits his guilt. I mean, I'll just tell you, I agree. And you've seen that government counsel didn't even try to defend the ruling on that point. It's really the problem is the merits ruling that the BIA went on to make. And I mean, I think you've heard government counsel's argument. I mean, do you have anything to add on what else we can look at in the record? Well, only that, you know, the law that we have regarding asylum and withholding, the purpose of that law is to protect people, protect people from being basically slaughtered, not just persecuted, but slaughtered. I mean, this law comes out of a situation where people were slaughtered. And so when you talk about personal ---- There's no question, counsel, that there are some sympathetic factors in this case. It's just that we're not sitting here as IJs or members of the BIA. And so the difficulty for your case really is that we're constrained by the standard review in this case and in determining whether substantial evidence supports the BIA's finding. And so that's why our discussions are focused so much on the record evidence. So if there's some citation in the record that you think is particularly helpful, we're happy to go back and take another look at that record evidence. Well, that is why I'm asking the court to remand this case. Because I don't think the respondent was able, being detained, to actually cognate the full impact of what he was afraid of in Mexico. And I think that the judge held a very truncated hearing by immediately saying he's not eligible. I don't think that the respondent was able to fully present his case. And that's why I'm asking that the case be remanded. Not reversed, but remanded so that the respondent and his counsel can present a full panoply of evidence. And perhaps during the course of the remand, he'll be released from custody, which would enable us to get more doctor's reports regarding his state and his vulnerability. Thank you.
judges: Noonan, Nguyen, Watford